**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA - (Alexandria)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. 1:18-cr-333(LMB) |
| CARLA DONNA MCPHUN | : | |
| Defendant | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

**I.     INTRODUCTION**

On September 17, 2018 Carla Donna McPhun appeared before this Honorable Court and entered a guilty plea to the one count Information pending against her, charging her with Wire Fraud in violation of 18 USC § 1343. The Court Ordered a Presentence Report and it has been submitted to the Court, Ms. McPhun, and the Government.

In this Memorandum, Ms. McPhun will argue that a sentence of probation followed by a period of supervised release is adequate and appropriate in this case to serve the sentencing purposes and factors set forth in 18 USC § 3553.

**II.     STATEMENT OF FACTS**

Ms. McPhun has accepted full responsibility for her role in the investment scheme created and perpetrated by Keisha Williams and Christian D'Andrade. Ms. McPhun's original and primary role in the scheme is that of a victim. Ms. McPhun lost a substantial portion of her personal assets by investing in Ms. Williams' and Mr. D'Andrade's fraudulent scheme. She also inadvertently subjected many of her friends and business

1

associates to devastating financial losses by recruiting them to invest in the scheme. As Ms. Williams and Mr. D'Andrade applied continual pressure on Ms. McPhun to obtain more funds for the investment scheme, Ms. McPhun panicked and felt grave responsibility for the fate of her own investment and that of the people she had recruited. She made the poor decision to use funds from an investor ("M.W.") toward the scheme, even though she had represented that the funds would be applied to an unrelated real estate investment. She did this while operating under the belief that she would be repaid by Ms. Williams in a timely manner, such that she could make good on the real estate investment she had promised M.W. Of course, the Williams scheme did not pan out as promised and M.W. was also defrauded.

## III.    ARGUMENT

After consideration of the Plea Agreement, sentencing guidelines range, the four purposes of sentencing and the six factors contained in 18 U.S.C. § 3553(a), it is respectfully suggested that the Court should sentence Ms. McPhun to a period of probation.

### A.   THE SENTENCING GUIDELINE RANGE

The base offense level for this offense is a seven (7), to which eight (8) points are added because the loss amount exceeded $95,000 (USSG § 2B1.1(b)(1)(E)). Two (2) points are then deducted for Ms. McPhun's acceptance of responsibility, to reach a total offense level of thirteen. Ms. McPhun has no criminal history, placing her in Criminal History category I. The applicable Guideline Range in this case has been correctly calculated to be 12-18 months, in Zone C of the Sentencing Table.   However, the

2

defense expects that the Government will be filing a motion under USSG § 5K1.1 requesting that Ms. McPhun be sentenced below the otherwise applicable USSG range.

**B. MS. MCPHUN SHOULD RECEIVE A DOWNWARD ADJUSTMENT PURSUANT TO USSG § 5K1.1 FOR HER SUBSTANTIAL ASSISTANCE TO THE GOVERNMENT**

Ms. McPhun expects that the Government will be requesting a downward departure on her behalf based on her substantial assistance to the Government, which included debriefings, lengthy trial preparation session, and trial testimony. This departure is warranted under all of the USSG § 5K1.1 factors.

Once the Government files a motion under USSG § 5K1.1(a), the Court has broad discretion to depart from the otherwise applicable sentencing guidelines to the extent the Court deems appropriate. See United States v. Pearce, 191 F.3d 488, 492 (4th Cir. 1999). The Fourth Circuit has noted that the District Court simply must not abuse its discretion when making this determination. Id. USSG § 5K1.1(a) directs the Court in evaluating the value to place on a defendant's cooperation.

> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.
>
> USSG § 5K1.1(a).
>
> Under all five factors, Ms. McPhun's cooperation can be deemed to have been

3

substantial and worthy of a reduction in her sentence.

Ms. McPhun first met with the case agents, voluntarily, at her home in February 2018. This meeting occurred shortly after Ms. Williams was arrested and Ms. McPhun learned about it on a television news report. Up until this time, Ms. McPhun had no idea that she was the victim of a massive fraud. At the time she met with the agents, she had just begun to realize that she had lost everything to Ms. Williams' and Mr. D'Andrade's fraud scheme.

Over the next few months, the Government's investigation showed that Ms. McPhun was not a co-conspirator in the Williams scheme. After meetings with Ms. McPhun and counsel, however, the parties reached an agreement with regard to M.W.'s investment and Ms. McPhun began her formal cooperation. Ms. McPhun met with the Government for debriefing sessions on three occasions. She truthfully and completely answered all questions, and provided significant background and explanations to the multitude of records the agents had already received. The extent of her cooperation in the Government's case was significant, as the Government was able to introduce evidence of Williams' fraud perpetrated on multiple victims, totaling approximately $1 million.

At trial, Ms. McPhun testified about the multiple clients she had recruited in reliance upon Williams' fraudulent scheme. Ms. McPhun allowed the Government to present its case in a consistent and judicially economic manner, avoiding the need to call each and every victim to the stand. Ultimately, this not only saved the time of the AUSAs and the Court, it saved the time and anxiety of those witnesses whose were spared the

4

experience of testifying at trial. Shortly after Ms. McPhun (and others) testified, Ms. Williams elected to enter a guilty plea thereby terminating the trial proceedings.

Under all five factors of § 5K1.1(a), Mr. McPhun's cooperation can be deemed to have been substantial and worthy of a reduction in her sentence.

**C.** **A SENTENCE OF PROBATION IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO COMPLY WITH THE APPLICABLE SENTENCING PURPOSES AND FACTORS PURSUANT TO 18 U.S.C. §3553(a)**

Pursuant to 18 USC 3553(a), a sentence of probation is sufficient but not greater than necessary to comply with the applicable sentencing purposes and factors. This sentence would adequately reflect the seriousness of Ms. McPhun's conduct and provide just punishment for her offense. The accompanying restrictive conditions, would promote respect for the law and adequately deter Ms. McPhun and others from engaging in this type of crime.

The Court need not fashion Ms. McPhun's sentence to avoid disparities with those of the other defendants involved in this scheme because a disparity is warranted in this case. Ms. McPhun was a victim in the larger fraud scheme. While she understands that what she did with regard to M.W.'s investment was wrong, she was in no way involved, or complicit in Williams' overall scheme. In no way did she realize any financial gain from her offense, and her intent was never to take money that she would not repay.

**1.** **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant Pursuant to 18 U.S.C. §3553(a)(1)**

a. *Nature and Circumstances of the Offense*

The nature and circumstances of this offense are atypical because both the

5

defense and the Government acknowledge that Ms. McPhun was a victim of the fraud scheme before she committed the fraudulent act to which she has entered a guilty plea.

In every way possible, Ms. McPhun has acknowledged that the fraud of M.W. was wrong. She has plead guilty and accepted responsibility. In soliciting her group of investor clients, she reached out to M.W. about making a $100,000 investment. Rather than alerting her that the money would be used to help fund the Williams project, Ms. McPhun told her the money would be used to fund a real estate investment in Maryland. She violated the trust with her client and M.W.'s investment was lost to Williams' fraud as a result.

Although it is not an excuse for misleading anyone, it is crucial that this court recognize the context in which Ms. McPhun's misleading information was made. At the time Ms. McPhun made the misrepresentation to M.W., she was receiving information that the Williams investment payout would be paid very soon. Ms. McPhun had always intended to use M.W.'s money for the real estate investment she originally told M.W. about once the Williams investment was returned. During the pendency of M.W.'s investment, Ms. McPhun remained in contact with M.W. She did not avoid her calls or disappear on her. Despite originally misrepresenting where M.W.'s money was going, Ms. McPhun always intended to make good on her promise and to use M.W.'s investment for the real estate project.

Ms. McPhun was originally persuaded into making an investment with Williams and the Celerity project by her acquaintance, Christian D'Andrade. She was introduced to D'Andrade by a mutual friend and was initially impressed by his success in

6

government contracting and investments. At first, Ms. McPhun declined to participate in the Celerity project because her main focus had always been real estate. However, Mr. D'Andrade eventually convinced her to invest because of the very high rate of promised return, and her confidence in Mr. D'Andrade's track record. Ms. McPhun fatefully invested $300,000 of her own money and agreed to seek out other investors for the project.   This money was nearly the entirety of all her liquid assets.

Upon D'Andrade's request, McPhun recruited other investors to fund the release of the Celerity software.   When Ms. McPhun would contact Mr. D'Andrade to inquire why she and her clients had not received the funds as promised, Mr. D'Andrade always requested additional money and presented an explanation for why the loans had not been paid. As time went on, the excuses and requests became more preposterous, and Ms. McPhun did her best to continuously assuage panicked clients. Ms. McPhun experienced growing anxiety over her investment and managing the investors she had recruited. Mr. D'Andrade always convinced Ms. McPhun that the investment was just within reach. In this urgency, Ms. McPhun made the mistake of misleading M.W. about where her investment money was going.

The explanations and excuses given by Ms. Williams and Mr. D'Andrade may seem extreme and unbelievable in hindsight today, but counsel has no doubt that Ms. McPhun truly believed these reasons, and believed that she was investing in something concrete and real. Even after Ms. Williams was arrested and the FBI interviewed her at her home, she still harbored faith that the deal would go through and that her clients would be repaid. Not until one of the debriefing sessions with FBI agents and the AUSAs

did Ms. McPhun come to realize and fully understand that the whole Celerity thing had been an elaborate hoax and that the investments would never be repaid.

### b.  History and Characteristics of the Defendant

Ms. McPhun is the mother four children aged 27, 25, 10 and 7. She resides in Silver Spring with her fiancé and their two young children. Prior to her engagement with Williams' healthcare software fraud scheme, Ms. McPhun had been in the mortgage business and more recently made a living making speculative real estate investments. She invested her own money, but had a small and intimate group of private investors whom she had worked with for years. Ms. McPhun would make real estate investments, and recruit funds from this small group of investors. The investments were fruitful both for her and her clients. Based upon these successes, she built a foundation of trust with these clients.

Ms. McPhun's unwitting involvement in Williams' fraud scheme has destroyed the good-will with her clients she worked hard to earn. While she would always return phone calls and keep clients informed, since the beginning of Williams' case she has been unable to contact any clients and alert them as to the status of their investments. Throughout this investigation, Ms. McPhun has felt that she herself has personally betrayed these clients who placed their trust in her, but been victimized by Ms. Williams.

In a showing of personal responsibility for the promises she has made, Ms. McPhun has agreed to pay a significant amount of restitution to clients other than M.W. who she did defraud, but who lost money through the scheme. This voluntary restitution is significant, totaling $293,000 and including five individuals.

Ms. McPhun will have to move forward from this while bearing the ignominious label of felon. She will continue to look for employment in new fields and continue to care for her two small children. Her home, which she has lived in for the past 15 years and raised her children, is soon to be foreclosed. These consequences have already provided Ms. McPhun with just punishment and deter Ms. McPhun and others from this type of conduct in the future.

Ms. McPhun has also been on pre-trial release since her guilty plea in this case and has aptly demonstrated that she is a strong candidate to follow all instructions of the Court in the future and to successfully complete supervised release.

## IV.     CONCLUSION

After consideration of the sentencing guidelines range as well as the six factors contained in 18 U.S.C. §3553(a), a sentence of probation followed by supervised release is appropriate in this case.

Respectfully submitted,

_____/s/_____
RICHARD A. FINCI
Houlon, Berman, Finci & Levenstein LLC
7850 Walker Drive, Suite 160
Greenbelt, Maryland 20770
Phone:  301-459-8200 | Fax: 301-459-5721
E-mail:  finci@houlonberman.com


_____/s/_____
Jonathan Oates, Esquire
Krum, Gergely, & Oates, LLC
4103 Chain Bridge Road, Suite 401
Fairfax, Virginia 22030

Telephone: 703-988-3711
Facsimile: 240-341-1423

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this _____th day of <u>November</u>, 2018, a copy of the foregoing Memorandum was served, via PACER, upon:

Grace Hill, Esquire
Jack Hanley, Esquire
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314

_____/s/_____
Jonathan Oates, Esquire

10