IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 1:18-cr-333 |
| | ) |
| CARLA DONNA MCPHUN, | ) |
| | ) |
| Defendant. | ) |

<u>GOVERNMENT'S RESPONSE TO MOTION OF MCDONALD HOLDINGS LLC</u>

On December 6, 2018, McDonald Holdings LLC ("MCDH") filed a motion with this Court requesting that this Court order the defendant in this matter, Carla McPhun, to pay MCDH $884,000 as restitution. The government agrees with MCDH that if evidence shows that the entity was a victim of the defendant's fraud scheme, then the Court ordinarily must order restitution. The government, however, believes that although the evidence shows that MCDH was a victim of Keisha Williams' fraud scheme, though not in the amount of $884,000, MCDH has not produced evidence showing that it was a victim of the defendant's separate and smaller fraud scheme.

The government believes that the evidence has been sufficiently developed to show that the defendant did not knowingly defraud MCDH. The government agreed after the criminal trial of Keisha Williams concluded not to oppose MCDH's issuance of a subpoena to Williams' criminal attorney for all of the discovery that the government had provided to Williams' attorney. Because everything had been provided electronically on disks, the government assumes that MCDH has had those materials for review. MCDH apparently has also ordered a transcript of the trial testimony. Despite all of this evidence and what has been developed in

discovery in the civil case involving the same parties, MCDH has not produced evidence to show that the defendant knowingly defrauded MCDH.

MCDH has requested that if this Court is not prepared to order the defendant to pay restitution to MCDH, the Court set the matter down for an evidentiary hearing. The government opposes that motion on three grounds. First, as mentioned above, the government believes that the record is sufficient for the Court to deny the motion. Second, if the Court disagrees with that position, the government believes that the need to develop further evidence on the issue of criminal intent is outweighed by the burden that would put on the sentencing process. Finally, if the Court disagrees with that position, too, it would make sense to postpone a decision on whether MCDH should receive a criminal restitution order against the defendant in the instant case. To avoid having multiple evidentiary hearings, the Court should defer ruling until it has heard all of the evidence developed in the civil matter. That case will have to proceed regardless of how the Court rules on MCDH's motion. The civil case against Edward Robinson will not be resolved by anything done in the criminal cases. Moreover, as the government will discuss below, more than half of the $884,000 that MCDH seeks by its motion is not related to the Keisha Williams' fraud scheme, and, therefore, cannot be resolved in the defendant's criminal case.

**The Evidence Does Not Show That the Defendant Defrauded MCDH**

<u>Claims Wholly Unrelated to the Keisha Williams' Fraud Scheme ($401,000)</u>

MCDH describes the defendant and Christian D'Andrade as co-defendants of Keisha Williams' in her fraud scheme. The government disagrees with that portrayal. MCDH incorrectly tells the Court that the defendant's Statement of Facts "stipulates that in furtherance of her scheme and artifice to defraud, McPhun 'obtained approximately $1 million for D'Andrade and Williams from others who were willing to loan

money.'" MCHH Motion, at 10. The Statement of Facts does not say that the defendant raised the money in furtherance of her scheme and artifice to defraud. Rather, the language quoted from the Statement of Facts is in the introductory section describing the defendant's role in raising money for William without reference to the defendant's own fraud scheme.. There is no evidence that while raising the $1 million for Williams, the defendant believed that Williams was lying about all of the fees and other monies that she had said were needed to cause the software to be released from Austria. Thus, the defendant was not a co-schemer with Williams, and did not raise the $1 million fraudulently as part of Williams's scheme.

The scheme to which the defendant pleaded guilty involved making misrepresentations to a potential lender to cause the individual to provide a loan to Williams. The defendant told the victim that her money would be used for a real estate project when the defendant knew that she would be sending the money to Williams. The government agrees with MCDH that if there were other victims of the same scheme, the Court could order the defendant to pay them, too If there were evidence proving that the defendant raised money from MCDH for Williams based on misrepresentations knowingly made by the defendant, or which she knew were being made by others, MCDH would be entitled to restitution from the defendant. Such misrepresentations would be part of the same scheme and artifice to defraud. The evidence, however, does not show that there were any other victims of the defendant's scheme, and, in particular, does not show that MCDH was a victim of the scheme to which the defendant pleaded guilty.[1]

Of the $884,000 that MCDH requests in restitution, there is no evidence whatsoever to suggest that all of it was the result of Keisha Williams' scheme to defraud, much less the lesser scheme of the defendant's. On page seven and eight of its memorandum, MCDH describes

---

[1] The defendant in her plea agreement agreed to restitution for three individuals, other than the victim of the defendant's crime. These were three individuals from whom (1) the defendant received money, (2) the defendant was liable to them civilly, and (3) the government believed that the defendant had not been clear when explaining how their money would be used.

eight transactions that it believes require restitution.  MCDH proffers no evidence, however, to show that the Devilwood investment, or investments 3, 11, and 12 related in any way to efforts to raise money for Keisha Williams by anyone.   The government is aware of no evidence to that effect, and although MCDH has access to all of the evidence and information provided by the government to Keisha Williams in discovery, MCDH apparently has not located any such evidence, either.  MCDH's failure to proffer any evidence in support of these four claims should eliminate them from the Court's consideration.  Those amounts total $401,000.

The Claim for Money Given to Robinson, But Apparently Never Given to Williams ($180,000)

With respect to Investment 10 on July 7, 2017 for $180,000, it appears from the defendant's memorandum that this money was provided to Edward Robinson.  The government's case agent, FBI Special Agent Jamie Vera, who is also a C.P.A., found no corresponding deposits or deposits into D'Andrade's or Williams' accounts.  Because MCDH gave the money to Edward Robinson, the government assumes that Robinson made the representations that MCDH states were made to obtain the money, and that he did something else with the money.  Of equal importance, MCDH proffers no evidence to suggest that the misrepresentations were made by the defendant or were made with her knowledge.  Moreover, the allegation that MCDH was told that one of D'Andrade's investors was dying of cancer was arguably correct if that was a reference to the first victim who testified at Williams' trial.  If the reference was to the purported Texas billionaire who Williams claimed was going to lend her $68 million, Williams told D'Andrade and the defendant that the billionaire was dying of cancer. There is no evidence that either D'Andrade or the defendant knew that Williams' statement was false.  Accordingly, there is no basis for this Court to consider ordering the defendant to pay that $180,000 in restitution.

Claims That Williams, But Not The Defendant, Should Be Ordered to Pay ($298,000)

The evidence also does not support MCDH's claim that it gave D'Andrade $73,000 on June 5, 2017 (Investment 9). The government found no deposit like that in D'Andrade's bank account. There is, however, a deposit about that time into Williams' account for $68,000 that came from Edward Robinson. The government believes that there is sufficient evidence to allocate this loss to MCDH, rather than to Robinson, in the Restitution Order that the government will propose to the Court for Keisha Williams. There is no evidence, though, to support a finding that this amount should be ordered in the defendant's case. Again, the government assumes that because the money went to Robinson, MCDH talked to him about this money, not the defendant. Furthermore, MCDH does not proffer evidence showing the either the defendant or Robinson believed that Williams was not traveling to Dubai to try to ensure the release of funds that would be used in part to repay McDonald. Accordingly, this Court should not consider this claim by MCDH for restitution from the defendant.

MCDH's claims for restitution for $230,000 for investments 7 and 8 are supportable, but they are supportable only with respect to Keisha Williams. MCDH gave the defendant $220,000, and she sent it to Williams. When Matthew McDonald of MCDH was interviewed by the FBI on February 19, 2018, he said that the defendant had asked him to loan $220,000 for a project. The defendant had asked him to transfer the money to Williams, but his research on the internet suggested that Williams had been involved in fraud. McDonald, therefore, had declined to send the money to Williams. McDonald told the FBI that the defendant had asked him if he was comfortable with sending the money to her if she guaranteed his investment. McDonald had agreed and signed a written agreement showing that the money would be used for the D'Andrade project. McDonald said that he had assumed that the project was a real estate project.

The defendant agreed with some of what McDonald told the FBI. She agreed that she had guaranteed the repayment of the $220,000 loan in the document referencing the D'Andrade project. She denied, however, that she had ever said that the money would be used for a real estate project. She also said that McDonald had known that the money was going to Williams, but because of his research, had not wanted to send the money directly to her. He had wanted to send it through the defendant, so that she would guarantee repayment.

When interviewed by the FBI in February 2018, Robinson said that the defendant had approached him about providing money to D'Andrade for a deal involving computer software. He had worked with the defendant before and trusted her judgment, so he did not ask for a lot of detail about the deal. He was more concerned with the returns promised. Robinson said that the defendant had asked for $250,000 for D'Andrade, and Robinson had not had that much. He said that he had been promised a referral fee if he could find another investor, so he had talked to McDonald about it.

On June 21, 2018, the FBI interviewed Robinson again about MCDH's loan of $220,000 for the D'Andrade project. He said that he and McDonald had both been told that Williams and D'Andrade were partners. He said that he and McDonald both still wanted to do the deal, because they trusted the defendant. He said that he, McDonald, and the defendant jointly had agreed that McDonald's money would go to the defendant, but they also had known that the money was going to the D'Andrade project, and Williams was D'Andrade's partner.

The FBI also interviewed D'Andrade about his contacts with McDonald. He recalled that he had one telephone call with McDonald. D'Andrade said that McDonald had asked him questions about the software project, which D'Andrade had answered.

Based on all of the information the government learned, it decided when it negotiated its plea agreement with the defendant that there was insufficient evidence that the defendant had misled McDonald about the nature of his loan, and so did not press her to agree to pay him restitution. Moreover, although it is true that the defendant had promised McDonald a quick repayment, there is no evidence that she had known that Williams had made that promise to D'Andrade in bad faith. Now, six months later, the government has not seen evidence to change its opinion. The government, therefore, does not believe a restitution order against the defendant for the $220,000 is appropriate.

The final transaction for which MCDH seeks a restitution order is $10,000 provided to D'Andrade on May 17, 2017, which MCDH identifies as investment 8. D'Andrade told the FBI that he never had told McDonald that any of the money McDonald was sending would be used to pay D'Andrade's mortgage. D'Andrade said that he believed that he had told McDonald that D'Andrade was having a hard time paying his mortgage, which was something that D'Andrade told many of the people whom he solicited for funds for Williams. D'Andrade, however, said that he did not tell McDonald that his money would be used for anything except in relation to obtaining the software.

The government believes that D'Andrade's statements have credence. He has admitted to misleading two lenders by telling them that their money would be used for making D'Andrade's business' payroll. There is no reason why he would lie about this $10,000. Moreover, the other lenders whom D'Andrade brought to Williams did not understand from D'Andrade that he was using their money for his mortgages, and in fact did not use their money for that purpose. Banks foreclosed on D'Andrade's two houses. Accordingly, although the

government believes that the $10,000 that went to Williams should be included in her Restitution Order, the government does not believe that it should be in the defendant's order.[2]

The government believes that MCDH is a victim of Keisha Williams. The government had tracked $230,000 of MCDH's money into Williams' accounts. With the information that MCDH has provided, the government is now aware that $68,000 that Robinson provided to Williams was in fact MCDH's money. The government will seek restitution for MCDH in that amount as well. The government, however, does not believe that there is evidence that either D'Andrade or the defendant defrauded MCDH out of this money. Furthermore, the government does not believe that MCDH has shown that any of the other money that MCDH provided to the defendant has any connection to Williams' fraud scheme, or the separate schemes of D'Andrade and the defendant respectively. Accordingly, the government requests that the Court deny MCDH's motion.

**There Should Be No Evidentiary Hearing in the Criminal Cases**

If this Court decides that it does not have sufficient evidence to determine whether MCDH is entitled to restitution against the defendant, the government asks that the Court not to hold an evidentiary hearing in this case (or that of D'Andrade). There are two key issues: the extent of the defendant's involvement in the transactions and to the extent that she was involved, whether she had fraudulent intent at the times of the transactions. If all of the evidence gathered in the criminal and civil cases to date is insufficient for the Court to rule, the resolution of these factual issues can be considered complex. Under 18 U.S.C. § 3663A(c)(3)(B), the Court can decline to order restitution if the need to order restitution is outweighed by the burden on the

---

[2] Perhaps Robinson somehow misled McDonald. Robinson sent the $10,000 to D'Andrade for McDonald along with another $10,000, and the government has never spoken to Robinson about this money. In any case, there does not appear to be any evidence connecting this transaction to the defendant.

sentencing process. In this case, the need is not great, as MCDH holdings has sued the defendant for the same restitution sought in this matter. The burden on the sentencing process, however, is apparent. The Court would have to hold an evidentiary hearing that would involve much of the same evidence and testimony that would be produced in the civil case. The Court might have to deal with self-incrimination issues, especially with respect to Edward Robinson who might not want to testify in a matter unrelated to him prior to his trial in the civil case. The Court would have to determine which evidence that might be admissible in the broader civil case would not be admissible in the criminal restitution hearing. Accordingly, the government believes that if the Court is not ready to rule on the merits of MCDH's claims, it should deny them in this matter and allow them to be resolved in the civil case.

If the Court wants to determine the issue of restitution for MCDH in the criminal case of the defendant, but believes that it wants to consider additional evidence, the government has a suggestion that would be better than holding an evidentiary hearing in the defendant's criminal case. The Court could postpone its determination of what amount, if any, it should order the defendant to pay MCDH. Instead, the Court could continue to consider the evidence produced to the Court in the civil case. The Court could then use that information to decide the MCDH restitution claims in the criminal cases. If the parties settle in the civil case, the government would agree to include any amount of restitution that the parties agree in the settlement should be included in the defendant's and D'Andrade's restitution orders.

## Conclusion

The government asks the Court to deny MCDH's claims because MCDH has produced insufficient evidence that its losses are the result of the defendant's fraud scheme. If the Court does not believe that it has sufficient evidence to rule at this time on the merits, the government

asks the Court to deny the claim under Section 3663A(c)(3)(B). If the Court does not want to rule on MCDH's claims at this time, the government recommends that the Court simply defer ruling on MCDH's restitution claims until after the civil case has concluded.

                                             Respectfully submitted,

                                             G. Zachary Terwilliger
                                             United States Attorney

By: _____/s/_____
        Grace L. Hill
        Jack Hanly
        Assistant United States Attorneys

CERTIFICATE OF SERVICE

      I hereby certify that on December 10, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

                                            /s/
                                    Jack Hanly
                                    Assistant United States Attorney